**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CORNELIUS WEBB,

    Petitioner,

v.

CIVIL NO. 2:07-CV-12689
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

THOMAS BELL,

    Respondent.
_____/

## OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS, (2) DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS; AND (3) DENYING A CERTIFICATE OF APPEALABILITY, AND LEAVE TO APPEAL IN FORMA PAUPERIS

Cornelius Webb, ("Petitioner"), presently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317. This matter is before the Court on Respondent's motion to dismiss the petition as untimely. For the reasons set forth herein, the Court agrees with Respondent and dismisses the petition for failure to comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d). The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

**I. Procedural History**

Petitioner was convicted of the above offense by a jury in the Wayne County Circuit Court and was sentenced on August 29, 2001 to twenty five to forty five years in prison. Petitioner filed a direct appeal with the Michigan Court of Appeals. On May 22, 2003, the Michigan Court of Appeals affirmed petitioner's conviction, but remanded the matter to the trial

1

court for a determination of whether petitioner was entitled to additional credit for time served in federal custody on the same charges. *People v. Webb,* No. 238195 (Mich.Ct.App. May 22, 2003). Petitioner, by his own admission, never filed an application for leave to appeal with the Michigan Supreme Court on direct appeal. On remand, the trial court amended petitioner's sentence on July 11, 2003 to grant him credit for the time spent in federal custody on the same charges.

On October 18, 2004, petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et., seq.,* with the trial court. After the trial court and the Michigan Court of Appeals denied petitioner relief, collateral review of petitioner's conviction ended in the state courts on May 30, 2007, when the Michigan Supreme Court denied petitioner's post-conviction application for leave to appeal. *People v. Webb,* 478 Mich. 869; 731 N.W. 2d 708 (2007).

On June 19, 2007, petitioner filed the instant petition for writ of habeas corpus, in which he seeks habeas relief on eight different grounds, all arising from his conviction and initial sentence.

**II. Discussion**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one year statute of limitation shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if

2

the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. *See Holloway v. Jones,* 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

In the present case, the Michigan Court of Appeals denied petitioner's direct appeal on May 22, 2003. Normally, the one year statute of limitations does not begin to run until the ninety day time period for filing a petition for writ of certiorari in the United States Supreme Court has expired. *See Bronaugh v. Ohio*, 235 F. 3d 280, 283 (6th Cir. 2000). In this case, however, petitioner is not entitled to have the ninety day time period for seeking a writ of certiorari added to the calculation of the limitations period, because his failure to file a timely application for leave to appeal to the Michigan Supreme Court divested the U.S. Supreme Court of jurisdiction to grant a writ of certiorari. *See Eisermann v. Penarosa,* 33 F. Supp. 2d 1269, 1272-73, n. 5 (D. Hawaii 1999)(citing to *Flynt v. Ohio*, 451 U.S. 619 (1981); *Street v. New York*, 394 U.S. 576 (1969)).

Under M.C.R. 7.302(C)(3), petitioner had fifty six days to file a delayed application for leave to appeal with the Michigan Supreme Court. *Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). Because petitioner did not file an application for leave to appeal with the Michigan Supreme Court, his conviction became final, for purposes of the AEDPA's statute of limitations, on July 17, 2003, fifty six days after the Michigan Court of Appeals affirmed his

conviction. *See Brown v. McKee,* 232 F. Supp. 2d 761, 765 (E.D. Mich. 2002); *Erwin v. Elo,* 130 F. Supp. 2d 887, 889 (E.D. Mich. 2001). Petitioner therefore had until July 17, 2004 to file his petition for writ of habeas corpus with this Court, unless the limitations period was otherwise tolled.

Petitioner filed a post-conviction motion with the trial court on October 18, 2004, after the one year limitation period had already expired. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period pursuant to 28 U.S.C. § 2244(d)(2) because there is no period remaining to be tolled. *See Hargrove v. Brigano*, 300 F. 3d 717, 718, n. 1 (6th Cir. 2002); *see also Jurado v. Burt*, 337 F. 3d 638, 641 (6th Cir. 2003). Because the one year limitations period had already expired by the time that petitioner filed his post-conviction motion, the filing of this motion did not toll the limitations period and the instant petition is therefore untimely.

In his response to the motion to dismiss, petitioner contends that the instant petition is timely for several reasons and should therefore not be dismissed.

Petitioner first contends that the one year statute of limitations did not commence to run on July 17, 2003, because the Michigan Court of Appeals had remanded his case to the trial court for re-sentencing. Petitioner was re-sentenced on July 11, 2003. Petitioner argues that because Michigan law permits a second appeal following re-sentencing, the one year limitations period would not commence to run until the conclusion of a second appeal. The Court cannot accept this argument.

The one year limitations period under § 2244(d)(1)(A) runs from the date of the original conviction and not from the date on which the judgment of re-sentencing on remand became

4

final, where the habeas petition challenges only the judgment of conviction and raises no challenge to the re-sentencing judgment. *See Bachman v. Bagley,* 487 F. 3d 979, 982-84 (6th Cir. 2007). Although petitioner's re-sentencing may have restarted the limitations period with respect to any challenges to his re-sentencing, it would not delay the commencement of the challenges to his underlying conviction. *Id.* In the present case, petitioner has raised no claims which challenge his re-sentencing in this petition. Therefore, all of the claims in his habeas petition, and therefore, the habeas petition itself, are untimely. *Id.* at 984.

Petitioner further appears to argue that the commencement of the limitations period should be delayed for the time that he spent collecting evidence in support of his claim that several prosecution witnesses committed perjury in his trial.

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the AEDPA's one year limitations period begins to run from the date upon which the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tennessee Board of Pardon and Paroles,* 431 F. 3d 896, 898 (6th Cir. 2005). However, the time commences under § 2244(d)(1)(D) when the factual predicate for a habeas petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given petitioner. *Redmond v. Jackson,* 295 F. Supp 2d 767, 771 (E.D. Mich. 2003). Moreover, the time under the AEDPA's limitations period begins to run pursuant to § 2244(d)(1)(D) when a habeas petitioner knows, or through due diligence, could have discovered, the important facts for his or her claims, not when the petitioner recognizes the facts' legal significance. *Id.* Finally, "§ 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Redmond,* 295 F. Supp. 2d at

771. A habeas petitioner has the burden of proof in persuading a federal court that he or she exercised due diligence in searching for the factual predicate of the habeas claims. *See Stokes v. Leonard,* 36 Fed. Appx. 801, 804 (6th Cir. 2002).

Petitioner seeks to delay the commencement of the limitations period pursuant to § 2244(d)(1)(D), because he claims that he only discovered that several witnesses had committed perjury at his trial based on "unfolding events" that were taking place in federal court at petitioner's brother's trial based on the same charges that petitioner was convicted of in state court. *See United States v. Bass,* U.S.D.C. No. 97-CR-80235-01 (E.D. Mich.)(Tarnow, J.); *aff'd* 460 F. 3d 830 (6th Cir. 2006); *cert. den.* 127 S. Ct. 2959 (2007).

Petitioner first claims that he became aware of the existence of a man named Christopher McGlown, whom he claims would establish that Carl Gooden, one of the witnesses in this case, had committed perjury against both petitioner and his brother, after Gooden testified at Bass' trial in federal court on August 1, 2003. [1]

There are several problems with petitioner's argument. First, although petitioner claims that he first learned about McGlown's existence only after Gooden testified on August 1, 2003, he indicates in his petition for writ of habeas corpus that McGlown wrote a letter to Bass' trial counsel on May 25, 2002, in which he allegedly informed Bass' counsel that Gooden had bragged about committing perjury at petitioner's state court trial and his plans to perjure himself at Bass' trial in federal court. In light of the fact that Bass was not only one of petitioner's co-defendants, [petitioner had initially been charged also in federal court] but also his brother, petitioner has provided no explanation to this Court as to how he was not made aware of

---

[1] McGlown's name has also been spelled McGlowan or McGowan throughout the proceedings in the Bass trial, as well as in petitioner's pleadings.

6

McGlown's existence at this earlier date. *Cf. Kerkman v. United States,* 200 Fed. Appx. 578, 581 (6th Cir. 2006)(petition for writ of error coram nobis to vacate conviction, based on claim that Government committed *Brady* violation by withholding grand jury transcripts of witness's testimony was barred by doctrine of laches; defendant had grand jury transcripts in his possession for ten years, including period during which prior habeas corpus proceedings were pending, yet failed to raise claim, and defendant's attorney had raised same issue in petition for error coram nobis filed on behalf of codefendant three years earlier).

Secondly, it appears that Gooden testified at Bass' trial that he did not remember meeting or speaking with McGlown at the Wayne County Jail when he was preparing to testify against petitioner in March or April of 2001. Gooden further denied telling McGlown that he had testified falsely against petitioner at his trial. Because Gooden's testimony from Bass' trial does not establish that he committed perjury, the commencement of the one year limitations period should not be delayed pursuant to § 2244(d)(1)(D) until petitioner discovered Gooden's testimony from his brother's trial. *See e.g. Whalen v. Randle,* 37 Fed. Appx. 113, 119 (6th Cir. 2002)(commencement of limitations period was not delayed until habeas petitioner's alleged discovery of factual predicate for actual innocence claim upon discovery of police report identifying potential witnesses of whom petitioner was aware at time of trial, absent evidence that report contained new evidence or contained suppressed evidence that would have produced different verdict and would have established a *Brady* violation).

Petitioner next contends that commencement of the limitations period should be delayed because he did not obtain a transcript of Desean Moore's testimony from the first grand jury proceedings in the federal prosecution until after his own trial had concluded in state court.

7

However, petitioner indicates that although Moore initially denied testifying before two grand juries in the federal prosecution at petitioner's trial, Moore was confronted with his testimony from the second grand jury proceeding and acknowledged that during his second grand jury proceeding, he admitted to lying during the first grand jury proceeding. Because the transcript of Moore's testimony from the grand jury was merely cumulative of evidence already introduced at petitioner's trial, it does not constitute newly discovered evidence, for purposes of delaying the commencement of the one year limitations period pursuant to § 2244(d)(1)(D). *See Souter v. Jones,* 395 F. 3d 577, 586-87 (6th Cir. 2005).

Petitioner next contends that commencement of the limitations period should be delayed because he did not obtain a transcript of Desean Moore's testimony from John Bass' trial, which showed discrepancies between Moore's testimony at petitioner's trial and his testimony at Bass' trial. Petitioner claims that these discrepancies establish that Moore perjured himself at petitioner's trial.

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343; *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003). Additionally, the fact that

8

a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum,* 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). In this case, the mere fact that there were discrepancies between Moore's testimony at petitioner's trial and at Bass' trial is insufficient to establish that he committed perjury at petitioner's trial. Because Moore's testimony from Bass' trial does not establish that he committed perjury at petitioner's trial, the commencement of the one year limitations period would not be delayed until petitioner discovered Moore's testimony from his brother's trial, because such evidence would not have produced a different result at petitioner's trial. *See Whalen,* 37 Fed. Appx. at 119.

Petitioner finally contends that the running of the one year limitations period should be delayed until he obtained an affidavit from prosecution witness Kobia Smith, dated January 13, 2005, in which Smith recanted his trial testimony against petitioner. As to Smith's affidavit, the only information that the Court has in determining whether petitioner acted with due diligence in discovering this information is the date the affidavit was notarized, January 13, 2005. This date merely informs the Court when the notary signed the affidavit, not when Smith recanted his testimony and not what petitioner did to obtain the affidavit earlier. Petitioner has thus failed to show how he exercised due diligence in obtaining Smith's affidavit, so as to delay the start of the one year limitations period pursuant to § 2244(d)(1)(D). *See Townsend v. Lafler,* 99 Fed. Appx. 606, 608 (6th Cir. 2004).

Finally, although the one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence, *see Souter,* 395 F. 3d at 599-600, petitioner's case falls outside of the actual innocence tolling exception enunciated in *Souter,* because petitioner has

9

presented no new, reliable evidence to establish that he was actually innocent of the crimes charged. *See Ross v. Berghuis,* 417 F. 3d 552, 556 (6th Cir. 2005).

In particular, Kobia Smith's recanting affidavit is insufficient to establish petitioner's innocence, so as to toll the limitations period. Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991). In particular, "[p]ostconviction statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *See Allen v. Yukins,* 366 F. 3d 396, 405 (6th Cir. 2004). In this case, petitioner has presented no evidence concerning the authenticity of Smith's affidavit, the motivation of Smith in signing the recanting affidavit, the circumstances surrounding the affidavit's execution, or its consistency with other evidence in trial record. Accordingly, Smith's alleged recantation is insufficient to establish that this is "'an extraordinary case'" in which tolling based on a claim of actual innocence would be appropriate. *See Giles v. Wolfenbarger,* 239 Fed. Appx. 145, 148 (6th Cir. 2007);cert. den. --- S.Ct. ----, 2008 WL 676057 (U.S. May 12, 2008).

With regards to the allegedly newly discovered evidence involving Carl Gooden and Desean Moore, such evidence, at best, would merely impeach their trial testimony. Evidence which merely impeaches a witness is insufficient to support a claim of actual innocence. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750-51 (E.D. Mich. 2001); *See also Malcum,* 276 F. Supp. 2d at 677. Moreover, petitioner has failed to provide any sworn statement from McGlown, regarding Gooden's alleged statements about committing perjury at petitioner's trial. The only evidence that petitioner has offered regarding McGlown's proposed testimony is

hearsay, which is insufficient to establish a habeas petitioner's actual innocence, so as to toll the limitations period. *See Knickerbocker v. Wolfenbarger,* 212 Fed. Appx. 426, 433 (6th Cir. 2007); *cert. den.* 128 S. Ct. 233 (2007).

**III. Conclusion**

Based on the foregoing analysis, the Court concludes that Petitioner failed to file his habeas petition within the one-year limitations period established by 28 U.S.C. § 2244(d) and the statute of limitations precludes federal review of the petition. Accordingly, the Court **GRANTS** Respondent's motion to dismiss and **DISMISSES** the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed. In such a case, no appeal is warranted. *Id.*

After conducting the required inquiry and for the reasons stated herein, the Court is

satisfied that jurists of reason would not find the Court's procedural ruling debatable. No certificate of appealability is warranted in this case and any appeal would be frivolous. See Fed. R.App. P. 24(a). Accordingly, the Court **DENIES** a certificate of appealability and **DENIES** leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 30, 2008.

s/Denise Goodine
Case Manager